IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                         CRIMINAL ACTION NO. 3:06CR210TSL-LRA

RODNEY CASE, KEVIN CLARK,
MIKE FULTON, DOUGLAS MURPHY
AND JAMES WARD

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Rodney Case, Kevin Clark, Mike Fulton, Douglas Murphy and James Ward to dismiss the indictment against them as unconstitutionally vague. The government opposes the motion, and the court, having reviewed the parties' memoranda and considered the oral arguments presented at the June 7, 2007 hearing on the motion, concludes that the motion is due to be granted in part and denied in part.

On December 20, 2006, the grand jury returned a five-count indictment against defendants. Count 1 charges that from January 2002 to January 22, 2004, defendants, formerly employed as engineers by Eaton Corporation[1] and who left the company to work for a competitor in 2002, conspired to violate the Economic Espionage Act of 1996, 18 U.S.C. 1831 et al. (EEA), and to commit wire fraud in violation of 18 U.S.C. § 1343. Under the heading "Overt Acts" the indictment charges fourteen separate overt acts

---

[1] According to the indictment, Eaton Corporation is a company that "designed, tested, and manufactured aerospace hydraulic fluid applications" for commercial and military applications.

committed in furtherance of the alleged conspiracy, including allegations that four of the defendants possessed Eaton CADs (computer assistance designs) while at the workplace of their new employer.

Count 2 charges that in or about January, 2002, defendants, aided and abetted by each other,

> did knowingly steal and appropriate without authorization a trade secret, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate or foreign commerce, intending that the theft would economically benefit someone other than the owner thereof, and intending or knowing that the offense would injure the owner of the trade secret in violation of 18 U.S.C.  § 1832(a)(1) and 2, Title 18, United States Code.

Count 2 incorporated paragraphs 1-25 by reference.

Count 3 charges that defendants "knowingly copied" a trade secret, reciting as follows:

> [Defendants] did knowingly copy without authorization a trade secret, specifically, technology related to the design specifications, manufacture and sale of military and commercial aviation hydraulics products that are related to or included in a product that is produced for or placed in interstate or foreign commerce, intending that the theft would economically benefit someone other than the owner thereof, and intending or knowing that the offense would injure the owner of the trade secret in violation of 18 U.S.C. § 1832(a)(2) and 2, Title 18, United States Code.

Counts 2 and 3 essentially track the language of 18 U.S.C.

§ 1832[2] and neither count purports to identify with any greater specificity the trade secret which was allegedly stolen or copied.

Counts 4 and 5 charge defendants with wire fraud in violation of 18 U.S.C. § 1343. These counts charge that defendants devised and engaged in a scheme, using "materially false and fraudulent pretenses, representations and promises," by which they "would steal, take and carry away proprietary information from Eaton," and "would use the information unlawfully taken from Eaton to compete against Eaton for government and commercial information." Within these counts, the indictment further charges that, by using this proprietary information, defendants sought to enrich themselves "through salaries, bonuses and/or commissions." Per the indictment, in execution of the scheme, defendant Clark sent two e-mails from North Carolina to Mississippi, one on February 2, 2003, and one on February, 24, 2003.

The language employed in Counts 4 and 5 essentially tracks the

---

[2] The relevant portions of 18 U.S.C. § 1832 provide:
(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly--

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

language of the wire fraud statute,[3] adding an allegation that the means employed by defendants were "material." The indictment does not more specifically identify the "proprietary information," nor does the indictment purport to identify any of the "materially false and fraudulent pretenses, representations and promises" by which the scheme was alleged to have been carried out.

Defendants urge that the indictment is unconstitutionally vague. Specifically, they contend that Counts 2 and 3 are insufficient as neither count purports to meaningfully identify the trade secret which was allegedly stolen or copied. Defendants further urge that Counts 4 and 5 are insufficient due to the lack of any specificity regarding either the proprietary information purportedly stolen or the "materially false and fraudulent pretenses, representations and promises" by which the scheme was alleged to have been carried out. Finally, they argue that because

---

[3]

Section 1343 of Title 18 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

the objects of the conspiracy fail due to vagueness, the conspiracy count must likewise fall.  For its part, the government asserts that the indictment more than adequately places defendants on notice of the crimes charged and further information is not necessary because "Defendants know what Eaton information was on their computers because they used the computers on a daily basis in their jobs at Frisby."  For the reasons which follow, the court concludes that Counts 2 through 5 are unconstitutionally vague and therefore, must be dismissed.  Furthermore, the court agrees that the conspiracy count, insofar as it is predicated on wire fraud, is also due to be dismissed.

"An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense."  U.S. v. Gordon, 780 F.2d 1165, 1169 (5th Cir. 1986). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  Id.  Moreover, as the government is quick to point out, "it is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense."  Id. at 1169-70.

In United States v. Kay, 359 F.3d 738, 756 (5th Cir. 2004), the

Fifth Circuit undertook to "determine whether an indictment that sets out the elements of the offense charged <u>merely by tracking the words of the statute itself</u>, is insufficient." <u>Id.</u> at 756 (emphasis in original). Collecting cases, the court observed that "[t]he cases in which an indictment that parrots the statute is held to be insufficient turn on a determination that factual information that is <u>not</u> alleged goes to the very <u>core of the criminalty</u> under the statute." <u>Id.</u> at 756-57 (emphasis in original). The court further observed that

> [t]he Supreme Court took this approach in <u>Russell v. United States</u>, [369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962)], in which it found indictments defective because the allegations under 2 U.S.C. § 192, which prohibits witnesses before congressional committees from "refus[ing] to answer any question pertinent to the question under inquiry," [<u>id.</u> at 752 n.2, 82 S. Ct. at 1038], failed to identify the "question under inquiry." The Court ruled that the "core of criminality" under the statute was the pertinency to the subject under inquiry of the question a witness refused to answer. [<u>Id.</u> at 771, 82 S. Ct. at 1038]. The Court stated: "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute. [<u>Id.</u> at 771, 82 S. Ct. at 1038]. The Court concluded that the indictments failed this test because, even though they did list the questions that the defendants had refused to answer, they failed totally to specify the topic under inquiry, which was the key to the legality or illegality of the defendants' acts. [<u>Id.</u> at 765-68, 82 S. Ct. at 1038]. In short, the defendants faced trial with the "chief issue undefined." <u>Id.</u> at 766, 82 S. Ct at 1038].

<u>Id.</u> at 757. After reviewing cases from the First and Second Circuits which applied <u>Russell</u>, the Fifth Circuit announced:

> In terms of the sufficiency of the indictment, however,

6

> the question is whether the business nexus element-which
> in the instant indictment is merely a paraphrase of that
> part of the statute-goes to the "core of criminality"
> [Russell, 369 U.S. at 764, 82 S. Ct at 1038], under the
> statute and contains generic terms, requiring more
> particularity.  Stated differently, the question is
> whether the lack of detail in that part of the indictment
> that deals with this one element is more like an absence
> of detail as to how the crime was committed than a
> failure to specify what the crime was.

Id. at 758-59.

Turning to the indictment in this case, defendants are charged in Counts 2 and 3 with the theft of a "trade secret"; there can be no doubt that the allegation of the existence of a "trade secret" goes to the "core criminality" of the statute, for as the government asserts in its response brief, "[i]n a nutshell, the Indictment charges that they walked out Eaton's door with stolen trade secrets then used those trade secrets at Frisby to compete with Eaton for government and commercial contracts."  The question then becomes is the phrase "trade secret" generic so as to require more particularity.

Something may be said to be "generic" when it relates to or is descriptive of an entire group or class.  See The American Heritage® Dictionary of the English Language, Fourth Edition. Retrieved June 13, 2007, from Dictionary.com website: http://dictionary.reference.com/browse/generic.  Here, § 1839(3) sets out to define the generic term "trade secret" as follows:

> The term "trade secret" means all forms and types of
> financial, business, scientific, technical, economic, or
> engineering information, including patterns, plans,

7

> compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

Clearly, in light of the fact that § 1839(3) defines an exceedingly large category of items, tangible and intangible, which may be found to be "trade secrets," merely charging that defendants had stolen a "trade secret" would be insufficient.  The government seems to recognize this and urges that dismissal is not necessary because the indictment describes the allegedly stolen trade secret by category, in that both Counts 2 and 3 recite that defendants stole or copied "a trade secret, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate or foreign commerce."  However, in a case where the government's stated position is that these defendants stole Eaton's "entire working product," that is, an "entire universe" of information, some of which were trade secrets, some of which were "proprietary" and some of which are proposed to be presented to the jury as "other materials," this purported limitation of the generic word "trade secret" is so broad as to be meaningless and thus, is

8

ineffectual.[4]  Accordingly, the court concludes that counts 2 and 3 should be dismissed.

As set forth above, in Counts 4 and 5, the indictment charges that, in violation of 18 U.S.C. § 1343, defendants devised and engaged in a scheme, using "materially false and fraudulent pretenses, representations and promises," by which they "would steal, take and carry away proprietary information from Eaton," and "would use the information unlawfully taken from Eaton to compete against Eaton for government and commercial information." Defendants maintain that Counts 4 and 5 fail to state an offense under 18 U.S.C. § 1343 as the indictment fails to identify the content of any representations and as no specific proprietary information has been identified.[5]  For its part, in its response

---

[4] The court further notes that while Counts 2 and 3 each charge that "a trade secret" was either stolen or copied, it is not altogether clear that, with regard to these counts, the government intends to limit itself to proving that a single trade secret was either stolen or copied.  At the hearing on this motion, the government quoted count 2 of the indictment which charged that a single trade secret had been stolen and then stated, "Your honor, that is just what they did.  And Mr. McDavid (sic) said that, well, that is just an entire universe.  That's what they took.  They took the entire universe.  And these are items that were – that fit in the description of trade secrets."  Also of concern to the court is the fact that the government has purported to reserve for itself the right to designate, at a later date, additional trade secrets which the defendants have allegedly stolen or copied.  As defendants point out, the matters which were presented to the grand jury and purportedly relied on by the grand jury in returning this indictment should be fixed in time and not subject to addition.

[5] The government does not appear to have taken any position regarding the alleged failure to specifically identify the

brief, the government took the position that the indictment need not contain the exact misrepresentations. Then, at the hearing on this matter, the government argued that the alleged misrepresentations were adequately set forth in the conspiracy count. The court disagrees.

"Wire fraud is (1) the formation of a scheme or artifice to defraud, and (2) use of the wires in furtherance of the scheme." United States v. Brown, 459 F. 3d 509, 518-19 (5th Cir. 2006). Moreover, a wire fraud indictment must charge that the defendant made false representations that were material. Neder v. United States, 527 U.S. 1, 24, 119 S. Ct. 1827, 1841, 144 L. Ed. 2d 35 (1999). A matter is material if

> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

Id. at 22 n.5, 119 S. Ct. at 1840 n.5 (quoting Restatement (Second) of Torts § 538 (1977)).

At the hearing on this motion, in response to the court's request for an answer to defendants' charge that the material misrepresentations were not set forth in the indictment, the attorney for the government stated: "Your Honor, they are. I would

---

"proprietary information" which was allegedly wrongfully acquired from Eaton.

argue that they were set forth in Count 1, which states that these defendants did conspire, at that time they did take away and steal the product and use it against Eaton and in direct competition." Clearly, to the extent that the government relies on this language, it has failed to show a material misrepresentation.  Moreover, the court's (and defendants') review of the indictment revealed only one allegation which could possibly support the government's position that the false representations were set out in Count 1 of the indictment.  In the conspiracy count under the heading "overt acts," paragraph 14 recites: "On or before January 4, 2002, defendant **DOUGLAS MURPHY** stated to an Eaton employee that he had or would return all Eaton technical documents that he had in his possession."  This allegation (as well as all of the allegations contained in the conspiracy count) was incorporated by reference into Counts 4 and 5.  Any argument on the government's part to the contrary, in the court's opinion, this statement is insufficient to sustain the wire fraud counts.  First and foremost, there is no allegation in the indictment that this alleged representation is false and while the Fifth Circuit has stated that a court may infer "materiality" of a false statement from other allegations in the complaint, see United States v. McGough, 510 F. 2d 598 (1975), the court has found no support for the proposition that the falsity of

11

a representation could likewise be inferred.[6]  These counts, like Counts 2 and 3, failed to apprise defendants as to the crime which they would be required to meet at trial, and accordingly, are also subject to dismissal.

The court next reaches defendants' argument that because the substantive counts are subject to dismissal, the conspiracy count necessarily falls.  On this point, the court agrees, in part.  According to defendants, Count 1, like Counts 2 and 3, fails to sufficiently identify the trade secrets allegedly taken or copied in violation of the EEA.  However, inasmuch as, the indictment under the "overt act" heading, provides that "on June 10, 2002, defendant **DOUGLAS MURPHY** gave an employee at Frisby an Eaton design drawing of a spline shaft and piston and instructed the employee to make the modifications of the drawing" and further alleges that on January 22, 2004, defendants Murphy, Ward, Fulton and Clark "possessed Eaton CADs while at Frisby," the indictment has sufficiently identified trade secrets or categories of trade secrets.

Lastly, defendants argue, and the government provides no citation or argument to the contrary, that because Count 1 fails,

---

[6] Because the court agrees that Counts 4 and 5 fail due to lack of any particularity regarding alleged material false representations, it will not reach the question of whether "proprietary information" goes to the "core criminalty" of the wire fraud statute, so as to require the government to descend to the particulars.  See United States v. Kay, 359 F.3d at 756.

like Counts 4 and 5, to identify the material false representations made in furtherance of the alleged scheme to defraud, the conspiracy count insofar as it is based on this charge, must also be found deficient.  The court agrees.  <u>United States v. Yefsky</u>, 994 F. 2d 885 (1st Cir. 1993) (concluding that because "a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count").  Accordingly, insofar as Count 1 of the indictment is predicated on wire fraud, it is also subject to dismissal.

    Based on the foregoing, it is ordered that defendants' motion to dismiss is granted in part and denied in part.

    SO ORDERED, this the 15th day of June, 2007.

                                 <u>/s/Tom S. Lee</u>
                                 UNITED STATES DISTRICT JUDGE