IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:06-cr-210-WHB-JCS

RODNEY CASE, KEVIN CLARK,
MIKE FULTON, DOUGLAS MURPHEY,
and JAMES WARD

<u>OPINION AND ORDER</u>

This cause is before the Court on Defendants' Motion to Dismiss the Original and Superceding Indictments with Prejudice [Docket No. 136]. The Court has considered the Motion, Response, Rebuttal, attachments to the pleadings, as well as supporting and opposing authorities and finds that the Motion is not well taken and should be denied with caveats.

I.  **Factual Background and Procedural History**

Eaton Corporation ("Eaton") is in the business of designing, testing, and manufacturing aerospace hydraulic fluid applications for commercial and military aircraft. Defendants Rodney Case, Kevin Clark, Mike Fulton, Douglas Murphey, and James Ward (collectively "Defendants"), were all employed by Eaton until January of 2002. In January of 2002, Defendants were hired by Frisby Aerospace ("Frisby"), which thereafter began to design, test, and manufacture aerospace hydraulic fluid applications in direct competition with Eaton. The government contends that

Defendants used proprietary information they had wrongfully acquired from Eaton while working for Frisby.

On December 20, 2006, the Grand Jury returned a five-count indictment against Defendants. Count 1 of the Indictment charged Defendants with conspiring to violate the Economic Espionage Act of 1996, codified at 18 U.S.C. § 1831 *et seq.*, and to commit wire fraud in violation of 18 U.S.C. § 1343. Count 2 of the Indictment charged that Defendants "did knowingly steal and appropriate without authorization a trade secret, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products" in violation of 18 U.S.C. § 1832(a)(1) and 2. Count 3 of the Indictment charged Defendants with "knowingly copy[ing] without authorization a trade secret, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products" in violation of 18 U.S.C. § 1832(a)(2) and 2. Counts 4 and 5 charged that Defendants devised and engaged in a scheme using "materially false and fraudulent pretenses, representations and promises" by which they "would steal, take and carry away proprietary information from Eaton" and would then "use the information unlawfully taken from Eaton to compete against Eaton for government and commercial contracts" in violation of 18 U.S.C. § 1343 and 2. The Indictment also cites to two e-mails, from North Carolina to Mississippi, which were purportedly

2

transmitted in the execution of the scheme alleged in Counts 4 and 5.

On June 15, 2007, United States District Judge Tom S. Lee entered a Memorandum Opinion and Order by which Counts 2 through 5 of the Indictment were dismissed as unconstitutionally vague, and Count 1 of the Indictment, to the extent it was predicated on an alleged conspiracy to commit wire fraud, was likewise dismissed. See Docket No. 84.[1]  Approximately one week later, on June 21, 2007, the government filed a motion to stay all proceedings in the case, including its court-ordered discovery obligations, until July 3, 2007.  See Docket No. 85.  In support of its motion, the government argued:

> On June 15, 2007, the Court dismissed a portion of Count 1 and all of Counts 2, 3, 4, and 5 of the Indictment in this case, concluding that most of the charges in the Indictment were unconstitutionally vague. As a result of the Court's ruling, the Government seeks to stay all proceedings until July 3, 2007, to allow the Government an opportunity to consider how it will proceed, including whether the Government will move to dismiss, seek reconsideration, file an appeal, or re-file a superseding indictment enumerating substantive counts that are related to the conduct underlying the charged conspiracy and possibly adding additional defendants.
>
> In light of the Court's recent ruling dismissing most counts in the Indictment, the Government moves the Court to stay all proceedings until July 3, 2007, including the requirement to file a bill of particulars and to provide Defendants with additional discovery (e.g., materials subject to disclosure under Brady v. Maryland, 373 U.S. 83 (1963)).

---

[1]  The above referenced criminal case was reassigned to the undersigned judge on February 21, 2008, after the recusals of Judge Lee and Judge Henry T. Wingate.

Id.  On July 6, 2007, before the Court ruled on the Motion to Stay, the government sent a correspondence to Judge Lee which provides:

> Last month, the Court dismissed four of the five counts of the Indictment in United States v. Case, et al., 3:06-cr-210-TSL-LRA,  including charges that the defendants stole trade secrets from their former employer, Eaton Corporation, in violation of the Economic Espionage Act of 1996, 18 U.S.C. § 1832.
>
> As a result of the Court's ruling, the government has moved to dismiss without prejudice the sole remaining count of the Indictment. However, the government intends to continue investigating other possible criminal investigations.  We expect to re-indict within the next 30 to 45 days in order to ensure a September 2007 trial date.  The additional period is needed in part to allow some of the defendants an opportunity to present facts they believe support their position that no crime has occurred. Several defendants asked for that opportunity, if no indictment is pending, and the government appreciates their concern.

See Doc No. 137, Ex. 1.  Attached to the correspondence was a proposed Order of Dismissal, by which Count 1 of the Indictment would have been dismissed without prejudice pursuant to Rule 48(a) of the Federal Rules of the Criminal Procedure.  The docket does not show that the government filed a motion seeking dismissal pursuant to Rule 48(a), or that the proposed Order of Dismissal was entered.  The Motion to Stay was ultimately denied as moot on October 15, 2007, after a Superceding Indictment was returned against Defendants.  See Text Only Order of October 15, 2007.[2]

---

[2]  On July 13, 2007, the government filed a Notice appealing Judge Lee's decision to the United States Court of Appeals for the Fifth Circuit.  The appeal was dismissed on August 9, 2007, on motion of the government.  See Docket No. 95.

As the government indicated it was considering whether to dismiss the Indictment, counsel for Defendants requested that they be given an opportunity to present their defenses to the charges contained therein. According to Defendants, while no promises were made by the government, they believed "if the charges in the indictment were met and answered on the merits, a good faith review by the government presented a chance worth taking" that the government would decline further prosecution. See Docket No. 137, at 6. On July 16, 2007, counsel for Defendants made their first presentation, which was directed at the specific charges in the Indictment, and the opinions of an expert witness designated by the government regarding Defendants' alleged use or copying of Eaton materials. Id. at 6. Following this meeting, the government indicated that it was passing on the grand jury target date in August, and that it would furnish defense counsel with documents that raised new issues in the case. Id. at 8.

On August 16, 2007, the government purportedly informed the Court that it needed additional time to determine whether to seek re-indictment, or decline further prosecution of Defendants. Id. The government also informed the Court and defense counsel that it had contacted an independent expert to provide advice regarding the opinions of its experts, and the defenses raised in the case. Id. Counsel for Defendants made additional presentations to the government on August 27, 2007, and September 13, 2007. Id. On

5

September 18, 2007, the government advised that its independent expert needed additional time to review the case.  Id.   On September 20, 2007, the government purportedly advised the Court and defense counsel that it was still in the process of determining whether to decline further prosecution of Defendants.  Id.

On September 27, 2007, and October 2, 2007, counsel for Defendants sent two letters to the government summarizing the reasons it should decline further prosecution of Defendants.  Id. at 9.  On October 2, 2007, defense counsel was advised that the government was considering an "honest services" charge.  Id.  On October 11, 2007, the Grand Jury returned a Superceding Indictment against Defendants charging conspiracy to violate 18 U.S.C. §§ 1343 and 1346 (Count 1); violations of 18 U.S.C. §§ 1343 and 1346, and 2 (Count 2-5); conspiracy to violate 18 U.S.C. §§ 1832(a)(1), 1832(a)(2), and 1832(a)(3) (Count 6); and violations of 18 U.S.C. §§ 1832(a)(1) and 2, 1832(a)(2) and 2, and 1832(a)(3) and 2 (Counts 7-12).  A Second Superceding Indictment was returned by the Grand Jury against Defendants on November 7, 2007.

Count 1 of the Second Superceding Indictment charges Defendants with conspiracy in violation of 18 U.S.C. § 371. Specifically, the Second Superceding Indictment charges that Defendants "did knowingly and intentionally conspire and agree with each other" to:

>  knowingly devise and intend to devise a scheme and artifice to defraud Eaton including to deprive Eaton of

their rights to honest services and to obtain money and
property for Eaton by means of material false and
fraudulent pretenses and representations and for the
purpose of executing the scheme and artifice and
attempting to do so, transmitted or caused to be
transmitted by means of wire communications, in
interstate commerce, certain writings, signs, signals, or
sounds in violation of Section 1343, and 1346, Title 18,
United States Code.

See Docket No. 179, ¶ 9(a). The objects of the alleged conspiracy

are that Defendants: "would and did leave their employment at Eaton

and take engineering jobs at Frisby where they would and did

compete directly against Eaton for aerospace contracts for

hydraulic pumps and motors"; "would enrich themselves through

salaries and business by using property stolen from Eaton while at

Frisby"; and "did attempt to recruit others, including engineers,

to participate in and work for Frisby and to continue to acquire

Eaton technology from former and present Eaton employees." Id. at

¶¶ 10-12. The methods and means of the alleged conspiracy are:

Defendants used their positions as employees of Eaton,
and without authority or permission and in direct breach
of their agreements with Eaton, to take, steal and
convert property belonging to Eaton, including but not
limited to computer programs, files, spreadsheets and
other technology, drawings, manuals, handbooks, business
plans, financial modes, instructions and CADs related to
the design, specifications, manufacture and sale of
military and commercial aviation hydraulics, pumps and
other component parts;

after the property and information was taken, stolen and
converted from Eaton, [Defendants] carried it with them
to Frisby where it was placed in their office and/or
personal computers and used it to compete against Eaton
for products listed for military and commercial
contracts; and

7

> [Defendants] engaged in and caused various acts,
> transactions, and deceptions which were designed to and
> which enabled them to, among other things, enrich
> themselves through salaries, bonuses and/or commissions
> paid by Frisby.

Id. at ¶¶ 13-15.  The phase "in direct breach of their agreements with Eaton" in Paragraph 13 of the Second Superceding Indictment apparently relates to certain documents signed by Defendants while employed by Eaton.  See id. ¶¶ 3-7 (alleging that each Defendant "signed several documents relat[ing] to the treatment of confidential property and information belonging to Eaton, among them a Vickers Acknowledgment of Trinova Corporation's Standards of Business Conduct, a Trinova Employee Invention and Confidential Information Agreement, and an Eaton Termination Understanding.").[3]

The overt acts allegedly undertaken to accomplish the objectives of the conspiracy include that Defendant James Ward sent an e-mail to Frisby on or about July 17, 2001, offering engineering services and to staff its engineering department; during October and November of 2001, Defendants interviewed for jobs with Frisby; Defendants all began to work for Frisby between January 4 through 14, 2002; Defendants James Ward and Douglas Murphey exchanged e-mails regarding recruiting other Eaton employees to work for Frisby; and each Defendant had Eaton property on his office computer at Frisby, the Frisby computer server, and/or his personal

---

[3]  Eaton was formerly known as Vickers-Aeroquip.  See Second Superceding Indictment, at ¶ 1.

home computer, all in violation of 18 U.S.C. § 371.  <u>Id.</u>, at ¶¶ 16-24.

Counts 2-5 of the Second Superceding Indictment charge that Defendants:

> aided and abetted by each other and others known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud Eaton, including to deprive Eaton of the right to honest services, and to obtain money and property for Eaton by means of materially false and fraudulent pretenses and representations.

<u>Id.</u> at ¶ 26.  To accomplish their allegedly fraudulent purposes, Defendants purportedly "engaged in and caused various acts, transactions, and deceptions to occur" which enabled them to "take, steal and convert, without permission or authority, and in direct breach of their agreements, the property of Eaton to Frisby" and "used that property to compete with Eaton for contracts."  <u>Id.</u> at ¶ 27.  Further, Defendants allegedly "knowingly caused certain writings" which are identified as four e-mail communications that were sent from Jackson, Mississippi, to Clemmons, North Carolina, to be "transmitted in interstate commerce by means of wire communications" all in violation of 18 U.S.C. §§ 1343, 1346 and 2. <u>Id.</u> at ¶ 28.

Count 6 of the Second Superceding Indictment charges that Defendants conspired:

> (a) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate

commerce intending and knowing that the offense will injure the owner of the trade secret and steals, or without authorization appropriates, takes, carries away, conceals, or by fraud, artifice, or deception obtains the trade secret in violation of 1832(a)(1), Title 18, United States Code;

(b) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate commerce intending and knowing that the offense will injure the owner of the trade secret and without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates or conveys the trade secret in violation of Section 1832(a)(2), Title 18, United States Code;

(c) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate commerce intending and knowing that the offense will injure the owner of the trade secret and without authorization possessed the trade secret in violation of Section 1832(a)(3), Title 18, United States Code.

Id. at ¶ 30(a)-(c). The objects of the alleged conspiracy are that Defendants: left their jobs with Eaton and accepted employment with Frisby where "they would and did compete directly against Eaton for aerospace contracts for hydraulic pumps and motors"; "would enrich themselves through salaries and business by using property stolen from Eaton while at Frisby'; and "would and did attempt to recruit others, including engineers, to participate in and work for Frisby and to continue to acquire Eaton technology from former and present Eaton employees." Id. at ¶¶ 31-33. The manner and means of the alleged conspiracy are that Defendants:

10

> used their positions as employees of Eaton, to steal,
> take and convert, without permission or authority,
> information believed to be trade secrets consisting of
> technology related to the design, specifications,
> manufacturer and sale of military and commercial aviation
> hydraulics.  As employees of Eaton, the defendants were
> in positions that allowed them access to information and
> property believed to be trade secrets of Eaton relating
> to the design and development of pumps for aerospace
> applications, including but not limited to Key Dims
> Computer Program (Keydims), Inline Part Matrix
> Spreadsheet, Sleeving of Cylinder, Inline Pump Design
> Handbook, Internal Cost Estimates for Creation of a
> Development and Test Center, and ESG EA Plan;
>
> copied ... and appropriated, without authorization, stole
> and carried away Eaton's property described in [above] to
> Frisby, where the defendants used them to compete against
> Eaton for products listed for military and commercial
> contracts;
>
> engaged in and caused various acts, transactions, and
> deceptions which were designed to and which enabled them
> to, among other things, enrich themselves through
> salaries, bonuses and/or commissions, which were based on
> the use of trade secrets that they had unlawfully
> acquired from Eaton.

Id. at ¶¶ 34-36.  The overt acts allegedly undertaken to accomplish

the objectives of the conspiracy include that James Ward sent an e-

mail to Frisby on or about July 17, 2001, offering engineering

services and to staff its engineering department; during October

and November of 2001, Defendants interviewed for jobs with Frisby;

Defendants all began to work for Frisby between January 4 through

14, 2002; Defendants James Ward and Douglas Murphey exchanged e-

mails regarding recruiting other Eaton employees to work for

Frisby; and each Defendant had Eaton property on his office

computer at Frisby, the Frisby computer server, and/or his personal

home computer, all in violation of 18 U.S.C. § 1832(a)(5).  Id. at ¶¶ 37-45.

Counts 7 through 9 are only charged against Defendants Mike Fulton, Douglas Murphey, and James Ward, and allege that the three "did knowingly steal and appropriate", "did knowingly copy" and "did knowingly possess":

> without authorization trade secrets belonging to Eaton, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate of foreign commerce, including but not limited to, the process known as Sleeving of Cylinder, intending to convert the trade secrets to the economic benefit of someone other that the owner thereof, and intending or knowing that the offense would injure Eaton, the owner of the trade secrets, in violation of [18 U.S.C. §§ 1832(a)(1) and 2, 1832(a)(2) and 2, and 1832(a)(3) and 2].

Id. at ¶¶ 46-51.

Counts 10 through 12 are only charged against Defendant James Ward, and allege that he "did knowingly steal and appropriate", "did knowingly copy" and "did knowingly possess":

> without authorization trade secrets belonging to Eaton, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate of foreign commerce, including but not limited to, Key Dims Computer Program (Keydims), Inline Pump Design Handbook, and Inline Part Matrix Spreadsheet, intending to convert the trade secrets to the economic benefit of someone other that the owner thereof, and intending or knowing that the offense would injure Eaton, the owner of the trade secrets, in violation of [18 U.S.C. §§ 1832(a)(1) and 2, 1832(a)(2) and 2, and 1832(a)(3) and 2].

Id. at ¶¶ 52-57.

Defendants have now moved to dismiss the original and superseding indictments pursuant to Rule 48 of the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment, and the Court's supervisory authority.

## II.  Legal Analysis

Defendants first move to dismiss the original and superceding Indictments, with prejudice, pursuant to Rule 48 of the Federal Rules of Criminal Procedure.  This Rules provides:

> (a) By the Government.  The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
>
> (b) By the Court.  The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

FED. R. CRIM. P. 48.

Under Rule 48(a), the government may "with leave of court, dismiss an indictment, information, or complaint."  The "leave of court" requirement of this Rule "has been interpreted 'to allow the courts to exercise discretion over the propriety of a prosecutorial motion to dismiss.'" United States v. Reyes, 102 F.3d 1361, 1367 (5th Cir. 1996) (quoting United States v. Welborn, 849 F.2d 980, 983 (5th Cir. 1988)); United States v. Salinas, 693 F.2d 348, 351 (5th Cir. 1982)).  "The primary purpose of the requirement is to

prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy." Id. (citations omitted). Thus, a request to dismiss under Rule 48(a) is "improper if motivated by bad faith," which is found "when the government is motivated 'by considerations clearly contrary to the public interest.'" Id. (citations omitted).

When considering a dismissal under Rule 48(a), the Court "must begin with the presumption that the government acted in good faith." Id. The Court must also apply the following two rules adopted by the Fifth Circuit in Welborn:

> First, if a defendant, without justification, does not contest dismissal the presumption of good faith permits the court to dismiss without prejudice and the defendant waives his right to later object to the government's motives. Second, if a defendant contests dismissal and the district court errs by not requiring the prosecution to furnish more than a conclusory reason to support its motion, the dismissal must be treated with prejudice only where the prosecution fails to offer sufficient justification for seeking dismissal when it reindicts or the error prejudiced the defendant's ability to attack the prosecutor's motives.

Welborn, 849 F.2d at 985. Thus, under Welborn, the defendant must contest the government's motion to dismiss both at the time the government files its motion and at the time he or she is reindicted. Reyes, 102 F.3d at 1367.

> These objections are necessary in order to permit the government to articulate a good faith reason for its dismissal. See Welborn, 849 F.2d at 983. Of course, the defendant's objection upon reindictment would be required only when the defendant has not already received the relief sought. Normally, this relief will be limited to the government's articulation of a good faith reason for

> its dismissal.  If the government fails to satisfy this
> burden of production, however, the defendant may be
> entitled to dismissal with prejudice.  See id. at 983-84.

Reyes, 102 F.3d at 1367 n.9.

In the case *sub judice*, the record shows that Defendants did not object to the government's request for dismissal pursuant to Rule 48(a) until after the Superceding Indictment was filed. Specifically, the Docket shows that the Superceding Indictment was returned on October 11, 2007, see Docket No. 107, but that Defendants' Motion to Dismiss the Original and Superceding Indictments with Prejudice, in which they oppose the government's request to dismiss under Rule 48(a), was not filed until October 18, 2007.  See Docket Nos. 136 & 137.  Because Defendants did not contest the government's request to dismiss without prejudice pursuant to Rule 48(a) at the time it was made, the Court finds they have waived their right to now object to the government's motives underlying that request.  See Welborn, 849 F.2d at 985.

Additionally, had Defendants timely objected to the requested Rule 48(a) dismissal, the Court finds the government articulated sufficient justification for that request.  The Fifth Circuit has cautioned:

> [T]he court should not grant a contested motion to
> dismiss unless the prosecution furnishes more than a bare
> conclusion in support of its motion. Although the burden
> of proof is not on the prosecutor to prove that dismissal
> is in the public interest, the prosecutor is under an
> obligation to supply sufficient reasons – reasons that
> constitute more than a mere conclusory interest. A bald
> statement that justice will be served by dismissal or

> that reindictment will be sought does not suffice. Based
> on the prosecutor's statement of reasons and any response
> by defendant, the court should determine whether the
> presumption of good faith is overcome by an affirmative
> reason to believe that the dismissal motion was motivated
> by considerations contrary to the public interest.

Welborn, at 983-94 (citations omitted).

As evidenced above, the Fifth Circuit has found that the assertions that "justice will be served by dismissal" or that "re-indictment will be sought" are "bare conclusions," which are not sufficient to warrant a Rule 48(a) dismissal. Welborn, 849 F.2d at 983. See also United States v. Salinas, 963 F.2d 348, 352 (5th Cir. 1982). In the case sub judice, the Court finds the government furnished more than "bare conclusions" in support of its request for dismissal under Rule 48(a). Specifically, the government requested the dismissal after Judge Lee entered his Opinion and Order dismissing four of the five counts charged in the original Indictment. The government also stated that it was intending to continue its investigation into other possible criminal violations, and that it was expecting to re-indict the Defendants. See Docket No. 137, Ex. 1. Based on pleadings before it, the Court finds there does not exist an affirmative reason to believe the government's request to dismiss under Rule 48(a) "was motivated by considerations contrary to the public interest." Accordingly, the Court finds that Defendants did not overcome the presumption of good faith in favor of the government, and that their Motion to Dismiss under Rule 48(a) should be denied.

16

Under Rule 48(b), The court may dismiss an indictment if an unnecessary delay occurs in "(1) presenting a charge to a grand jury"; "(2) filing an information against a defendant;" or "(3) bringing a defendant to trial."  The Fifth Circuit has found that this Rule "is not confined to constitutional violations but also embraces the inherent power of the court to dismiss for want of prosecution." United States v. Novelli, 544 F.2d 800, 803 (5th Cir. 1977).  The Fifth Circuit has also found that "dismissal under Rule 48(b) is not required unless the constitutional speedy trial right has been flouted." United States v. Hill, 622 F.2d 900, 908 (5th Cir. 1980) (citing United States v Noll, 600 F.2d at 1123, 1127 (5th Cir. 1979); United States v. Gorthy, 550 F.2d 1051, 1053 (5th Cir.), cert. denied, 434 U.S. 834 (1977)).  See also United States v. Edwards, 577 F.2d 883, 887 n.1 (5th Cir. 1978) ("Rule 48(b) vests much discretion in the trial court and a dismissal on speedy trial grounds is not mandatory unless the defendant's constitutional speedy trial rights have been violated.").

In the case *sub judice*, Defendants have not asserted that their constitutional right to a speedy trial has been violated. Accordingly, the Court finds it is not required to dismiss the Second Superceding Indictment pursuant to Rule 48(b). Additionally, the Court finds it should not exercise its "inherent power" to dismiss the Second Superceding Indictment for want of prosecution pursuant to Rule 48(b), or through its supervisory

17

authority.   The Fifth Circuit, while discussing the supervisory authority of the Court to dismiss an indictment with prejudice, found:

> The supervisory authority of the district court includes the power to impose the extreme sanction of dismissal with prejudice only in extraordinary situations and only where the government's misconduct has prejudiced the defendant.  See United States v. Fulmer, 722 F.2d 1192, 1195 (5th Cir. 1983); United States v. Campagnuolo, 592 F.2d 852, 865 (5th Cir. 1979);  see also Bank of Nova Scotia v. United States, 56 U.S.L.W. 4714, 4715-16 (U.S. June 22, 1988).  A district court exceeds the proper bounds of its power to order dismissal of an indictment with prejudice when it fails to consider whether less extreme sanctions might maintain the integrity of the court without punishing the United States for a prosecutor's misconduct.  Cf. United States v. Sarcinelli, 667 F.2d 5, 6-7 (5th Cir. Unit B 1982) (least severe sanction should be imposed under Federal Rule of Criminal Procedure 16 for noncompliance with discovery orders).

Welborn, 849 F.2d 985.

The Court finds that the facts in this case do not present an extraordinary situation warranting dismissal with prejudice.  While the record shows that the government was deficient in complying with discovery orders prior to the date on which the superceding indictments were filed, there has been no showing that it was likewise deficient after the superceding indictments were filed. Further, under Welborn, the Court cannot dismiss a case with prejudice for discovery violations without first imposing less extreme sanctions, including those authorized by Rule 16(d) of the Federal Rules of Criminal Procedure.  Additionally, the Court finds that Defendants' allegations regarding prejudice do not support the

18

extreme sanction of dismissal with prejudice. For example, Defendants allege they have been prejudiced because they have been suspended from their positions with Frisby; they disclosed (albeit voluntarily) significant aspects of their defense with regard to charges in the original Indictment; the government procured superceding indictments, and obtained a new expert witness to provide testimony in the case; and the trial date was postponed. The Court finds that while Defendants have articulated genuine claims of prejudice, they are insufficient to show that they have been hampered from defending the charges alleged against them in the Second Superceding Indictment. Accordingly, the Court finds that the case should not be dismissed under Rule 48(b) or through an exercise of its supervisory authority and, therefore, that Defendants' Motion to Dismiss on these grounds should be denied.

Defendants also seek dismissal of the case under the Due Process Clause of the Fifth Amendment because of an alleged pre-indictment delay. On this issue, the United States Supreme Court has held:

> [A]pplicable statutes of limitations protect against the prosecution's bringing stale criminal charges against any defendant, United States v. Lovasco, 431 U.S. 783, 788-789 (1977); United States v. Marion, 404 U.S. 307, 322 (1971), and, beyond that protection, the Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.

United States v. Gouveia, 467 U.S. 180, 192 (1984) (alterations in original).  The Fifth Circuit has applied this same standard.  See e.g. United States v. Crouch, 84 F.3d 1497 (5th Cir. 1996).  The Fifth Circuit has also cautioned:

> Necessarily, then, a far stronger showing is required to establish the requisite actual, substantial prejudice pretrial than would be required after trial and conviction.  Indeed, it is difficult to imagine how a pretrial showing of prejudice would not in almost all cases be to some significant extent speculative and potential rather than actual and substantial....  This is not to say that a motion to dismiss on such a basis should not be filed and initially considered prior to trial.  However, at least in all but the very clearest and most compelling cases, the district court, rather than grant such a motion prior to trial, should carry it with the case, and make the determination of whether actual, substantial prejudice resulted from the improper delay in light of what actually transpired at trial.

Id. at 1516-17 (alterations in original).

In the case *sub judice*, Defendants' claim of pre-indictment delay appears to be predicated on the delay preceding the filing of the Superceding Indictment.  See Docket No. 228 (arguing:

> It is undisputed that the government did not disclose to the defense until just before the return of the superceding indictment that it was considering bringing honest services charges against defendants.  By withholding this information until it was too late, the government gave defendants no opportunity to address in any meaningful way why honest services charges should not be brought in this case.  Similarly, the government failed to disclose to defendants, until October 15, even the name of the independent expert it said it had retained to objectively assess the case, or that this witness was actually the government's new testifying trade secret expert.  The government's representation that any new indictment would streamline the case was flatly incorrect, and further shows that the government was not acting fairly during the July-October period.

Id. at 11-12.

Even if the Court were to find that the alleged actions of the government prior to procuring the Superceding Indictment "were a deliberate device to gain an advantage over" Defendants, to show that a Fifth Amendment Due Process violation occurred, Defendants must also demonstrate that the delay "caused ... actual prejudice in presenting [their] defense." <u>Gouveia</u>, 467 U.S. at 192.  The Court finds that such showing has not been made on the pleadings. In accordance with <u>Crouch</u>, the Court finds that Defendants' Fifth Amendment Due Process challenge should be carried with the case so that the Court may determine whether actual, substantial prejudice resulted from the improper delay in light of what actually transpires at trial.  Accordingly, the Court finds that Defendants' Motion to Dismiss for pre-indictment delay under the Due Process Clause of the Fifth Amendment should presently be denied, without prejudice, thereby permitting Defendants to raise this issue at trial.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss the Original and Superceding Indictments with Prejudice [Docket No. 136] is hereby denied.  To the extent the Motion seeks dismissal pursuant to Rule 48 of the Federal Rules of Criminal Procedure and pursuant to the supervisory authority of the Court, the Motion is

denied with prejudice.   To the Extent the Motion seeks dismissal under the Due Process Clause of the Fifth Amendment for pre-indictment delay, the Motion is denied without prejudice. Defendants may raise the issue of pre-indictment delay at the trial of this matter.

SO ORDERED this the 23rd day of April, 2008.

                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE