IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                  CRIMINAL NO. 3:06-cr-210-WHB-JCS

RODNEY CASE, KEVIN CLARK,
MIKE FULTON, DOUGLAS MURPHEY,
and JAMES WARD

<u>OPINION AND ORDER</u>

This cause is before the Court on several motions filed by Defendants seeking dismissal of the Second Superceding Indictment under which they face charges of conspiracy, wire fraud, and economic espionage.  The Court, having considered the motions, responses, rebuttals if filed, attachments to the pleadings, as well as supporting and opposing authorities finds that Counts 1-5, which charge Defendants with wire fraud and conspiracy to commit wire fraud, and Counts 9 and 12, which charge certain defendants with knowingly possessing trade secrets in violation of the Economic Espionage Act should be dismissed, and that all other Counts should remain for trial.

## I.  Factual Background and Procedural History[1]

On November 7, 2007, the Grand Jury returned a Second Superceding Indictment against Defendants.  Count 1 of the Second

---

[1]  The factual background and procedural history of this case is presented in the Opinion and Order entered by the Court on April 23, 2008 [Docket No. 286], which is incorporated by reference into hereto.

Superceding Indictment charges Defendants with conspiracy in violation of 18 U.S.C. § 371.  Specifically, the Second Superceding Indictment charges that Defendants "did knowingly and intentionally conspire and agree with each other" to:

> knowingly devise and intend to devise a scheme and artifice to defraud Eaton including to deprive Eaton of their rights to honest services and to obtain money and property for Eaton by means of material false and fraudulent pretenses and representations and for the purpose of executing the scheme and artifice and attempting to do so, transmitted or caused to be transmitted by means of wire communications, in interstate commerce, certain writings, signs, signals, or sounds in violation of Section 1343, and 1346, Title 18, United States Code.

See Docket No. 179, ¶ 9(a).  The objects of the alleged conspiracy are that Defendants: "would and did leave their employment at Eaton and take engineering jobs at Frisby where they would and did compete directly against Eaton for aerospace contracts for hydraulic pumps and motors"; "would enrich themselves through salaries and business by using property stolen from Eaton while at Frisby"; and "did attempt to recruit others, including engineers, to participate in and work for Frisby and to continue to acquire Eaton technology from former and present Eaton employees."  Id. at ¶¶ 10-12.  The methods and means of the alleged conspiracy are:

> Defendants used their positions as employees of Eaton, and without authority or permission and in direct breach of their agreements with Eaton, to take, steal and convert property belonging to Eaton, including but not limited to computer programs, files, spreadsheets and other technology, drawings, manuals, handbooks, business plans, financial modes, instructions and CADs related to the design, specifications, manufacture and sale of

military and commercial aviation hydraulics, pumps and other component parts;

after the property and information was taken, stolen and converted from Eaton, [Defendants] carried it with them to Frisby where it was placed in their office and/or personal computers and used it to compete against Eaton for products listed for military and commercial contracts; and

[Defendants] engaged in and caused various acts, transactions, and deceptions which were designed to and which enabled them to, among other things, enrich themselves through salaries, bonuses and/or commissions paid by Frisby.

Id. at ¶¶ 13-15. The phase "in direct breach of their agreements with Eaton" in Paragraph 13 of the Second Superceding Indictment apparently relates to certain documents signed by Defendants while employed by Eaton. See id. ¶¶ 3-7 (alleging that each Defendant "signed several documents relat[ing] to the treatment of confidential property and information belonging to Eaton, among them a Vickers Acknowledgment of Trinova Corporation's Standards of Business Conduct, a Trinova Employee Invention and Confidential Information Agreement, and an Eaton Termination Understanding.").[2]

The overt acts allegedly undertaken to accomplish the objectives of the conspiracy include that Defendant James Ward sent an e-mail to Frisby on or about July 17, 2001, offering engineering services and to staff its engineering department; during October and November of 2001, Defendants interviewed for jobs with Frisby; Defendants all began to work for Frisby between January 4 through

---

[2]  Eaton was formerly known as Vickers-Aeroquip.  Id. ¶ 1.

14, 2002; Defendants James Ward and Douglas Murphey exchanged e-mails regarding recruiting other Eaton employees to work for Frisby; and each Defendant had Eaton property on his office computer at Frisby, the Frisby computer server, and/or his personal home computer, all in violation of 18 U.S.C. § 371. Id. at ¶¶ 16-24.

Counts 2-5 of the Second Superceding Indictment charge that Defendants:

> aided and abetted by each other and others known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud Eaton, including to deprive Eaton of the right to honest services, and to obtain money and property for Eaton by means of materially false and fraudulent pretenses and representations.

Id. at ¶ 26. To accomplish their allegedly fraudulent purposes, Defendants purportedly "engaged in and caused various acts, transactions, and deceptions to occur" which enabled them to "take, steal and convert, without permission or authority, and in direct breach of their agreements, the property of Eaton to Frisby" and "used that property to compete with Eaton for contracts." Id. at ¶ 27. Further, Defendants allegedly "knowingly caused certain writings" which are identified as four e-mail communications that were sent from Jackson, Mississippi, to Clemmons, North Carolina, to be "transmitted in interstate commerce by means of wire communications" all in violation of 18 U.S.C. §§ 1343, 1346 and 2. Id. at ¶ 28.

4

Count 6 of the Second Superceding Indictment charges that Defendants conspired:

> (a) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate commerce intending and knowing that the offense will injure the owner of the trade secret and steals, or without authorization appropriates, takes, carries away, conceals, or by fraud, artifice, or deception obtains the trade secret in violation of 1832(a)(1), Title 18, United States Code;
>
> (b) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate commerce intending and knowing that the offense will injure the owner of the trade secret and without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates or conveys the trade secret in violation of Section 1832(a)(2), Title 18, United States Code;
>
> (c) to knowingly and with intent to convert to the economic benefit of anyone other than the owner thereof, a trade secret that is related to or included in a product that is produced for or placed in interstate commerce intending and knowing that the offense will injure the owner of the trade secret and without authorization possessed the trade secret in violation of Section 1832(a)(3), Title 18, United States Code.

Id. at ¶ 30(a)-(c).  The objects of the alleged conspiracy are that Defendants: left their jobs with Eaton and accepted employment with Frisby where "they would and did compete directly against Eaton for aerospace contracts for hydraulic pumps and motors"; "would enrich themselves through salaries and business by using property stolen from Eaton while at Frisby"; and "would and did attempt to recruit

others, including engineers, to participate in and work for Frisby and to continue to acquire Eaton technology from former and present Eaton employees." Id. at ¶¶ 31-33. The manner and means of the alleged conspiracy are that Defendants:

> used their positions as employees of Eaton, to steal, take and convert, without permission or authority, information believed to be trade secrets consisting of technology related to the design, specifications, manufacturer and sale of military and commercial aviation hydraulics. As employees of Eaton, the defendants were in positions that allowed them access to information and property believed to be trade secrets of Eaton relating to the design and development of pumps for aerospace applications, including but not limited to Key Dims Computer Program (Keydims), Inline Part Matrix Spreadsheet, Sleeving of Cylinder, Inline Pump Design Handbook, Internal Cost Estimates for Creation of a Development and Test Center, and ESG EA Plan;

> copied ... and appropriated, without authorization, stole and carried away Eaton's property described in [above] to Frisby, where the defendants used them to compete against Eaton for products listed for military and commercial contracts;

> engaged in and caused various acts, transactions, and deceptions which were designed to and which enabled them to, among other things, enrich themselves through salaries, bonuses and/or commissions, which were based on the use of trade secrets that they had unlawfully acquired from Eaton.

Id. at ¶¶ 34-36. The overt acts allegedly undertaken to accomplish the objectives of the conspiracy include that James Ward sent an e-mail to Frisby on or about July 17, 2001, offering engineering services and to staff its engineering department; during October and November of 2001, Defendants interviewed for jobs with Frisby; Defendants all began to work for Frisby between January 4 through

6

14, 2002; Defendants James Ward and Douglas Murphey exchanged e-mails regarding recruiting other Eaton employees to work for Frisby; and each Defendant had Eaton property on his office computer at Frisby, the Frisby computer server, and/or his personal home computer, all in violation of 18 U.S.C. § 1832(a)(5).  Id. at ¶¶ 37-45.

Counts 7 through 9 are only charged against Defendants Mike Fulton, Douglas Murphey, and James Ward, and allege that the three "did knowingly steal and appropriate", "did knowingly copy", and "did knowingly possess":

> without authorization trade secrets belonging to Eaton, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate of foreign commerce, including but not limited to, the process known as Sleeving of Cylinder, intending to convert the trade secrets to the economic benefit of someone other that the owner thereof, and intending or knowing that the offense would injure Eaton, the owner of the trade secrets, in violation of [18 U.S.C. §§ 1832(a)(1) and 2, 1832(a)(2) and 2, and 1832(a)(3) and 2].

Id. at ¶¶ 46-51.

Counts 10 through 12 are only charged against Defendant James Ward, and allege that he "did knowingly steal and appropriate", "did knowingly copy", and "did knowingly possess":

> without authorization trade secrets belonging to Eaton, specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products that are related to or included in a product that is produced for or placed in interstate of foreign commerce, including but

not limited to, Key Dims Computer Program (Keydims),
Inline Pump Design Handbook, and Inline Part Matrix
Spreadsheet, intending to convert the trade secrets to
the economic benefit of someone other that the owner
thereof, and intending or knowing that the offense would
injure Eaton, the owner of the trade secrets, in
violation of [18 U.S.C. §§ 1832(a)(1) and 2, 1832(a)(2)
and 2, and 1832(a)(3) and 2].

Id. at ¶¶ 52-57.

Defendants now seek dismissal of the Second Superceding
Indictment on grounds including, vagueness, statute of limitations,
venue, and prosecutorial vindictiveness.


## II.  Discussion

### A.  Wire Fraud

Count 1 of the Second Superceding Indictment charges
Defendants with conspiracy to commit wire fraud in violation of 18
U.S.C. § 371.[3]  Counts 2-5, which charge Defendants with wire fraud
in violation of 18 U.S.C. §§ 1343 and 1346, are predicated on four
e-mail communications that were sent from Jackson, Mississippi, to
Clemmons, North Carolina, between February 6, 2003, and April 18,

---

[3]  Section 18 U.S.C. § 371 provides, in relevant part:

If two or more persons conspire either to commit any
offense against the United States, or to defraud the
United States ... in any manner or for any purpose, and
one or more of such persons do any act to effect the
object of the conspiracy, each shall be fined under this
title or imprisoned not more than five years, or both.

8

2003.[4]  As regards these Counts, Defendants first argue that the
Second Superceding Indictment is unconstitutionally vague because
it does not identify any allegedly material false or fraudulent
representation that was made in furtherance of the alleged scheme
to defraud.

The United States Court of Appeals for the Fifth Circuit has
held that an "indictment is sufficient if it contains the elements
of the offense charged, fairly informs the defendant what charge he
must be prepared to meet, and enables the accused to plead
acquittal or conviction in bar of future prosecutions for the same
offense." United States v. Gordon, 780 F.2d 1165, 1169 (5th Cir.
1986) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)).
The courts "are not concerned with whether the indictment could

---

[4]  Section 18 U.S.C. § 1343 provides, in relevant part:

Whoever, having devised or intending to devise any scheme
or artifice to defraud, or for obtaining money or
property by means of false or fraudulent pretenses,
representations, or promises, transmits or causes to be
transmitted by means of wire, radio, or television
communication in interstate or foreign commerce, any
writings, signs, signals, pictures, or sounds for the
purpose of executing such scheme or artifice, shall be
fined under this title or imprisoned not more than 20
years, or both....

Section 18 U.S.C. § 1346 provides:

For the purposes of this chapter, the term "scheme or
artifice to defraud" includes a scheme or artifice to
deprive another of the intangible right of honest services.

have been better framed, or whether it invokes a particular 'ritual of words,' but whether it conforms to the minimal standards required by the Constitution." <u>United States v. Harms</u>, 442 F.3d 367, 372 (5th Cir. 2006) (citing <u>United States v. Wilson</u>, 884 F.2d 174, 179 (5th Cir. 1989)).  As such, "an exact recitation of an element of the charged crime is not required, provided the indictment as a whole 'fairly imports' the element." <u>Harms</u>, 442 F.3d at 372.

"Wire fraud is (1) the formation of a scheme or artifice to defraud, and (2) use of the wires in furtherance of the scheme." <u>United States v. Brown</u>, 459 F.3d 509, 518–19 (5th Cir. 2006).  The government "must also prove that the scheme to defraud involved a materially false statement." <u>Harms</u>, 442 F.3d at 372.[5]  <u>See also</u> <u>Neder v. United States</u>, 527 U.S. 1, 25 (1999) ("[M]ateriality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."); <u>Chris Albritton Constr. Co. v. Pitney Bowes, Inc.</u>, 304 F.3d 527, 532 (5th Cir. 2002) ("Both mail fraud and wire fraud require a scheme or artifice to defraud which includes false or fraudulent pretenses, representations or

---

[5]  Although <u>Harms</u> involved an alleged violation of the mail fraud statute, 18 U.S.C. § 1341, the mail fraud and the wire fraud statutes are governed by the same analysis.  <u>See</u> <u>United States v. Loney</u>, 959 F.2d 1332, 1335 n.4 (5th Cir. 1992) ("[T]he Supreme Court has held that the federal mail and wire fraud statutes 'share the same language in relevant part' and accordingly are governed by the 'same analysis.') (citing <u>Carpenter v. United States</u>, 484 U.S. 19, 25 n.6 (1987)).

promises, requiring proof of intent to defraud."). A matter is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." Neder, 527 U.S. at 22 n.5 (quoting RESTATEMENT (SECOND) OF TORTS § 538 (1977)).

A review of the Second Superceding Indictment does not reveal any materially false statement allegedly made by any defendant. Instead, the wire fraud counts allege that Defendants "used their positions as employees of Eaton, and without authority or permission and in direct breach of their agreements with Eaton, to take, steal and convert property belonging to Eaton..." See Docket No. 179, ¶¶ 13, 27. The agreements referred to in Paragraphs 13 and 27 are a Vickers Acknowledgment of Trinova Corporation's Standards of Business Conduct, a Trinova Employee Invention and Confidential Information Agreement, and an Eaton Termination Understanding. See id. ¶¶ 3-7. The Court finds the allegations in the Second Superceding Indictment are not sufficient to support a charge of wire fraud.

To the extent the Second Superceding Indictment alleges that Defendants "used their positions as employees of Eaton" to steal, and "without authority or permission" stole, property belonging to

Eaton, the indictment does not allege a materially false representation.  To the extent the Second Superceding Indictment alleges that Defendants breached their agreements by stealing Eaton property, the Court again finds it does not allege a materially false representation.  While this allegation suggests that Defendants, sometime after their employment with Eaton ended, breached agreements "relating to the treatment of confidential property and information belonging to Eaton",[6] there is no allegation that they were engaged in fraud at the time the agreements were entered, that they had no intention of performing under the agreements at the time they were entered, or that they entered these agreements with the specific intent to defraud Eaton. See e.g. United States v. Kreimer, 609 F.2d 126, 128 (5th Cir. 1980) (finding that the wire fraud "statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract.  Its condemnation of a 'scheme or artifice to defraud' implicates only plans calculated to deceive.  The government must prove not only that there was fraudulent activity but also that the defendant had a 'conscious knowing intent to defraud.'").  See also United States v. D'Amato, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) (finding that a "breach of contract does not amount to mail fraud.  Failure to comply with a contractual obligation is only fraudulent when the promisor never

---

[6] See Docket No. 179, ¶¶ 3-7.

intended to honor the contract.... To infer fraudulent intent from mere nonperformance, therefore, would eviscerate the distinction between a breach of contract and fraud."); <u>Perlman v. Zell</u>, 185 F.3d 850, 853 (7th Cir. 1999) (finding that a "[b]reach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud.").

The Court finds that Counts 2-5 of the Second Superceding Indictment must be dismissed as they do not contain all of the elements necessary to sustain a charge of wire fraud, and they do not fairly inform Defendants of the charges they must be prepared to meet. Additionally, as the wire fraud charges in Counts 2-5 fail, the Court finds the Count 1 of the Second Superceding Indictment, which charges conspiracy to commit wire fraud, likewise fails. Accordingly, the Court finds that Defendants' motion to dismiss Counts 1-5 as unconstitutionally vague should be granted. The Court, therefore, will not consider Defendants' other motions seeking dismissal of those same Counts, or their motion requesting the government to elect between the conspiracies charged in Counts 1 and 6 of the Second Superceding Indictment.


**B.  Economic Espionage Act**

Counts 6-12 of the Second Superceding Indictment charge Defendants with violations of the Economic Espionage Act ("EEA"), codified at 18 U.S.C. § 1832. This Act provides, in relevant part:

13

(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly –

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

Under Count 6 of the Second Superceding Indictment, all Defendants are charged with conspiracy to violate the EEA. Counts 7-9 are only charged against Defendants Mike Fulton, Douglas Murphey, and James Ward, and allege that the three "did knowingly steal and appropriate", "did knowingly copy", and "did knowingly possess" a trade secret belonging to Eaton including "the process known as Sleeving of Cylinder." Counts 10-12 are only charged against Defendant James Ward, and allege that he "did knowingly steal and

appropriate", "did knowingly copy", and "did knowingly possess" trade secrets belonging to Eaton including the Key Dims Computer Program (Keydims), Inline Pump Design Handbook, and Inline Part Matrix Spreadsheet.

Defendants first move to dismiss Counts 6-12 on the grounds that the Second Superceding Indictment is unconstitutionally vague. In support of their motion, Defendants argue that the charges under the EEA are vague because they incorporate the phrase "including but not limited to" before identifying the allegedly stolen trade secrets, and the subject trade secrets are not identified with sufficient specificity.

The Court, having reviewed the Second Superceding Indictment, finds that the EEA charges are stated with sufficient clarity so as to apprise Defendants of the crimes with which they are charged. In the opinion of the Court, the inclusion of the phrase "including but not limited to" does not render the Second Superceding Indictment unconstitutionally vague as it is clear from the indictment that Defendants are only charged with having stolen the trade secrets identified therein.  The Court additionally finds that the trade secrets are identified with sufficient specificity. Accordingly, the Court finds Defendants' motion to dismiss Counts 6-12 on the grounds of constitutional vagueness should be denied.

Second, Defendants move to dismiss the EEA charges under the vagueness doctrine arguing that the term "trade secret" as applied

15

in that statute is unconstitutionally vague. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Powell, 423 U.S. 87, 92 (1975) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)). In United States v. Yang, 281 F.3d 534 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit rejected a challenge similar to the one raised by Defendants. In Yang the court reasoned:

> Here, the Defendants complain that they cannot know that their conduct violates the statute unless they know that the information they seek to steal is in fact a trade secret. The standard for vagueness in a criminal statute is whether "it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." The [EEA] clearly proscribes the attempt or conspiracy to steal trade secrets. We have every confidence that ordinary people seeking to steal information that they believe is a trade secret would understand that their conduct is proscribed by the statute.

Id. at 544 n.2. Based on the limited facts before, the Court finds that the EEA may constitutionally be applied to Defendants in this case. Accordingly, the Court finds that Defendants' motion to dismiss under the vagueness doctrine should be denied.

Third, Defendants seek to dismiss Counts 6-12 as barred by the applicable statute of limitations. On this issue, the Fifth Circuit has held:

> The return of a timely indictment tolls the statute of limitations as to the charges alleged therein. 18 U.S.C.

16

§ 3282.  United States v. Elliott, 849 F.2d 554, 561
(11th Cir. 1989).  A superseding indictment filed while
the initial indictment is pending is timely unless it
broadens or substantially amends the charges made in the
original indictment.  Elliott, 849 F.2d at 561; United
States v. Grady, 544 F.2d 598, 601–02 (2d Cir. 1976).

Notice to the defendant is the central policy underlying
the limitations doctrine. United States v. Italiano, 894
F.2d 1280, 1282 (11th Cir. 1990); United States v. Gengo,
808 F.2d 1, 3 (2d Cir. 1986).  Similarly, notice is the
touchstone in deciding whether a superseding indictment
substantially changes the original charges.  Gengo, 808
F.2d at 3.  A timely, pending indictment serves this
purpose by apprising the defendants "that they will be
called to account for their activities and should prepare
a defense." Grady, 544 F.2d at 601.  See United States
v. Marion, 404 U.S. 307, 322–23 & n.14 (1971) and Toussie
v. United States, 397 U.S. 112, 114–15 (1970).  If the
allegations and charges are substantially the same in the
old and new indictments, the assumption is that the
defendant has been placed on notice of the charges
against him.  That is, he knows that he will be called to
account for certain activities and should prepare a
defense. Italiano, 894 F.2d at 1283.

United States v. Schmick, 904 F.2d 936, 940 (5th Cir.
1990)(alterations in original).[7]

---

[7]  In response, the government argues that it may rely on
the savings provision in 18 U.S.C. § 3288, which provides:

Whenever an indictment or information charging a felony
is dismissed for any reason after the period prescribed
by the applicable statute of limitations has expired, a
new indictment may be returned in the appropriate
jurisdiction within six calendar months of the date of
the dismissal of the indictment or information ...

The record in the case *sub judice*, however, shows that while Judge
Tom S. Lee dismissed certain Counts in the original Indictment, the
original Indictment was not dismissed.  Accordingly, the Court
finds the government may not avail itself to the savings provision
of 18 U.S.C. § 3288.

The Court finds that the Second Superceding Indictment does not broaden or substantially amend the charge of conspiracy in violation of the EEA that was made in the original Indictment. Although the Second Superceding Indictment charges conspiracy to violate the EEA under 18 U.S.C. § 1832(a)(5), while the original Indictment charged conspiracy to violate the EEA under 18 U.S.C. § 371, and identifies different allegedly stolen trade secrets, the original Indictment clearly gave Defendants notice that they were to defend against charges that they conspired to violate the EEA. See Schmick, 904 F.2d at 941 (citing United States v. Friedman, 649 F.2d 199, 204 (3rd Cir. 1981) ("Where the facts alleged have not been changed, although additional underlying details have been alleged, a superseding indictment brought outside the statute of limitations is timely."). Accordingly, the Court finds that the charge of conspiracy in violation of the EEA, as set forth in Count 6 of the Second Superceding Indictment, is not barred under the applicable statute of limitations.

The Court likewise finds that Counts 7, 8, 10, and 11 are not time-barred. The original Indictment charged Defendants with knowingly stealing and knowingly copying trade secrets in violation of 18 U.S.C. §§ 1832(a)(1) and (2), respectively. See Docket No. 1, Counts 2 and 3. Although the original Indictment did not identify the trade secrets allegedly stolen or copied, that Indictment clearly gave Defendants notice that they were to defend

18

against charges that they violated the EEA by engaging in such conduct. The Second Superceding Indictment now identifies the underlying details of the charges, i.e. it identifies the specific trade secrets that were allegedly stolen and/or copied. See Docket No. 179, Counts 7-8, 10-11. As the allegations supporting Counts 7, 8, 10, and 11 of the Second Superceding Indictment were only amended to include additional underlying details, and do not broaden or substantially amend the charges in the original Indictment, the Court finds these Counts are not time- barred. See Schmick, 904 F.2d at 941.

The Court finds, however, that Counts 9 and 12 are time-barred. Count 9 charges Defendants Mike Fulton, Douglas Murphey, and James Ward with knowingly possessing a trade secret, which is identified as "the process known as Sleeving of Cylinder", in violation of 18 U.S.C. § 1832(a)(3). Count 12 charges Defendant James Ward with knowingly possessing trade secrets, which are identified as the Key Dims Computer Program (Keydims), the Inline Pump Design Handbook, and the Inline Part Matrix Spreadsheet, in violation of 18 U.S.C. § 1832(a)(3). The original Indictment, however, does not charge any defendant with knowingly possessing a trade secret in violation of 18 U.S.C. § 1832(a)(3). Because the charges in Counts 9 and 12 of the Second Superceding Indictment were not charged in the original Indictment, the Court finds they do not relate back to that Indictment and are time-barred. See

19

Schmick, 904 F.2d at 941 (finding that a superceding indictment related back to the original indictment in a case in which the superceding indictment did not add any new charges against the defendants.").

For these reasons, the Court finds Defendants' motion to dismiss Counts 6, 7, 8, 10, and 11 of the Second Superceding Indictment on the grounds that they are barred by the applicable statute of limitations should be denied, but that Defendants' motion to dismiss Counts 9 and 12 as untimely should be granted. As the Court finds Counts 9 and 12 should be dismissed as untimely, it will not consider Defendants' venue challenge to those Counts.

Fifth, Defendants seek to dismiss Counts 1-6 and 9-12 on the basis of prosecutorial vindictiveness. As the Court has already dismissed Counts 1-5, 9, and 12 on other grounds, it will not consider Defendants' prosecutorial vindictiveness claim as regards those Counts. In support of their challenge, Defendants argue that the government obtained superceding indictments, which include additional criminal counts, after they filed multiple motions to compel discovery, and after Judge Lee dismissed a substantial part of the original Indictment.

Under Fifth Circuit precedent:

If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a

> reasonable minded defendant that the prosecutor's
> decision to increase the severity of charges was
> motivated by some purpose other than a vindictive desire
> to deter or punish appeals, no presumption of
> vindictiveness is created.   In trying the issue of
> vindictiveness, the prosecutor may offer proof of the
> sort suggested in <u>Hardwick v. Doolittle</u>, 558 F.2d 292
> (5th Cir. 1977), that as a matter of fact his actions
> were not vindictive.   The burden of proof (by a
> preponderance of the evidence) remains on the defendant
> who raised the affirmative defense.   If, on the other
> hand, the course of events provides no objective
> indication that would allay a reasonable apprehension by
> the defendant that the more serious charge was
> vindictive, i.e., inspired by a determination to "punish
> a pesky defendant for exercising his legal rights," a
> presumption of vindictiveness applies which cannot be
> overcome unless the government proves by a preponderance
> of the evidence that events occurring since the time of
> the original charge decision altered that initial
> exercise of the prosecutor's discretion.

<u>United States v. Krezdorn</u>, 718 F.2d 1360, 1365 (5th Cir.

1983)(alterations in original).   Significantly, "a pre-trial change

in the indictment ... is less likely to be deemed vindictive: 'In

the course of preparing a case for trial, the prosecutor may

uncover additional information that suggests a basis for further

prosecution or he simply may come to realize that information

possessed by the State has broader significance.'" <u>United States v.</u>

<u>Brown</u>, 298 F.3d 392, 405 (5th Cir. 2002) (quoting <u>United States v.</u>

<u>Goodwin</u>, 457 U.S. 368, 381-82 (1982)).

> In addition, a defendant before trial is expected to
> invoke procedural rights that inevitably impose some
> "burden" on the prosecutor.   Defense counsel routinely
> file pretrial motions to suppress evidence; to challenge
> the sufficiency and form of an indictment; to plead an
> affirmative defense; to request psychiatric services; to
> obtain access to government files; to be tried by jury.
> It is unrealistic to assume that a prosecutor's probable

21

> response to such motions is to seek to penalize and to
> deter. The invocation of procedural rights is an
> integral part of the adversary process in which our
> criminal justice system operates.
>
> Thus, the timing of the prosecutor's action in this case
> suggests that a presumption of vindictiveness is not
> warranted. A prosecutor should remain free before trial
> to exercise the broad discretion entrusted to him to
> determine the extent of the societal interest in
> prosecution. An initial decision should not freeze
> future conduct. As we made clear in <u>Bordenkircher v.
> Hayes</u>, 434 U.S. 357 (1978), the initial charges filed by
> a prosecutor may not reflect the extent to which an
> individual is legitimately subject to prosecution.

<u>Goodwin</u>, 457 U.S. 381-82 (alterations in original).

In the original Indictment, Defendants were charged with conspiracy to violate the EEA under of 18 U.S.C. § 371, while the Second Superceding Indictment charges conspiracy to violate the EEA under 18 U.S.C. § 1832(5). As noted in <u>Goodwin</u>, however, "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." <u>Id.</u> Here, based on the allegations in the Second Superceding Indictment, Defendants are legitimately subject to prosecution under 18 U.S.C. § 1832(5) even though the penalty provisions under that statute are harsher than those under 18 U.S.C. § 371. The Court finds the decision to charge conspiracy under 18 U.S.C. § 1832(5) in the Second Superceding Indictment appears to have been motivated by a legitimate review of the case, and not a vindictive desire to punish Defendants for the pretrial motions they had filed.

Second, both the original and superceding indictments charge Defendants with violations of the EEA, specifically 18 U.S.C. § 1832(a)(1) and (2).  In his June 15, 2007, Memorandum Opinion and Order, Judge Lee dismissed Counts 2 and 3 of the original Indictment, which charged violations of 18 U.S.C. § 1832(a)(1) and (2), on the basis that the government failed to identify the trade secrets that were allegedly stolen and/or copied in those Counts. Thereafter the government filed the Second Superceding Indictment that, *inter alia*, identifies the trade secrets allegedly stolen and/or copied by Defendants in violation of the EEA.  As the purpose of the government in obtaining the Second Superceding Indictment was to correct the deficiencies found by Judge Lee in the original Indictment, the Court finds that a challenge of prosecutorial vindictiveness cannot be sustained.  See Krezdorn, 718 F.2d at 1365 (finding no prosecutorial vindictiveness in a case in which the government obtained a superceding indictment to correct deficiencies identified by the appellate court).

Based on the procedural record in this case, and the timing of the government with respect to obtaining the Second Superceding Indictment, the Court finds no objective event that would cause a reasonable minded defendant to believe that the government's decision to increase the severity of charges was motivated by a vindictive desire to deter or punish.  Accordingly, the Court finds Defendants' motion to dismiss on the basis of prosecutorial vindictiveness should be denied.

23

### III.   Conclusion

The Court finds that Counts 1–5 of the Second Superceding Indictment should be dismissed on the basis of unconstitutional vagueness.   The Court additionally finds that Counts 9 and 12 should be dismissed on the basis they are barred by the applicable statute of limitations.   The remaining Counts will remain for trial.

For the foregoing reasons:

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Counts 1–5 of the Superceding Indictments for Unconstitutional Vagueness and Failure to State a Claim [Docket No. 129, 186] is hereby granted.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 1–5 of the Superceding Indictments on the Basis that "Honest Services" Under 18 U.S.C. § 1346 is Unconstitutionally Vague Under the Void for Vagueness Doctrine [Docket No. 152, 186] is hereby denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 2–5 of the Superceding Indictments as Time-Barred [Docket No. 187] is hereby denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 1 and 6 of the Superceding Indictments as Multiplicitous or Require the Government to Elect Between Them [Docket No. 139, 186] is hereby denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 7–12 of the Superceding Indictments on Limitations and Venue Grounds [Docket No. 127, 186] is hereby granted in part, and denied in part.  To the extent Defendants' Motion seeks dismissal of Counts 9 and 12, the Motion is granted.  To the extent Defendants' Motion seeks dismissal of Counts 7, 8, 10, and 11, the Motion is denied.  To the extent Defendants' Motion seeks dismissal on the issue of venue, it is denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 6–12 of the Superceding Indictments as Unconstitutionally Vague [Docket No. 131, 186] is hereby denied.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 1 and 6 of the Superceding Indictments as Time–Barred [Docket No. 144, 186] is denied in part, and denied as moot in part.  To the extent Defendants' Motion seeks dismissal of Count 1, the Motion is denied as moot.  To the extent Defendants' Motion seeks dismissal of Count 6, the Motion is denied.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 6–12 of the Superceding Indictments on the Basis that 18 U.S.C. § 1832 is Unconstitutionally Vague Under the Void for Vagueness Doctrine [Docket No. 141, 186] is hereby denied.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts 2–3, 6, and 9–12 of the Superceding Indictments, and the Honest Services Prong of Counts 1, 4, & 5 Based on Prosecutorial Vindictiveness [Docket No. 142, 186] is denied in part, and denied

as moot in part.  To the extent Defendants' Motion seeks dismissal of Counts 1-5, 9, and 12 the Motion is denied as moot.  To the extent Defendants' Motion seeks dismissal of Counts 6, 10, and 11, the Motion is denied.

SO ORDERED this the 25th day of April, 2008.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE