```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

**UNITED STATES OF AMERICA**

VS.                              CRIMINAL NO. 3:06-cr-210-WHB-JCS

**RODNEY CASE, KEVIN CLARK,
MIKE FULTON, DOUGLAS MURPHEY,
and JAMES WARD**

## OPINION AND ORDER

This cause is before the Court on Defendants' Motion for a <u>Franks</u> Hearing and to Suppress. The Court, having considered the motion, response, attachments to the pleadings, as well as supporting and opposing authorities finds the Motion is not well taken and should be denied. Accordingly, the Court additionally finds that the subpoenas seeking documents and the attendance of witnesses at the requested <u>Franks</u> hearing should be quashed, and that the Orders of United States Magistrate Judge Linda R. Anderson requiring production of such documents should be vacated.

### I.  Factual Background and Procedural History

On January 21, 2004, Federal Bureau of Investigation Special Agent Brendan J. Sheehan ("Sheehan") presented an application for search warrant to P. Trevor Sharp, United States Magistrate Judge for the Middle District of North Carolina. The application, which sough authorization to search a building occupied by Frisby

Aerospace, Inc. ("Frisby"), in Clemmons, North Carolina, was based on an FBI investigation that began in May of 2003, after the FBI received information that employees of Frisby were using computer-assisted design ("CAD") drawings that allegedly had been stolen from Eaton Aerospace LLC, Vickers Fluid Power Division ("Eaton-Vickers").  In the affidavit supporting the application for the requested warrant ("Supporting Affidavit"), Sheehan averred that he was told by a Confidential Witness ("CW") that:

> He had previously worked for Sperry-Vickers (a predecessor to Eaton-Vickers), and was thus familiar with the nomenclature related to Eaton-Vickers's specification codes and use of that company's CAD software;
>
> He began working as a designer for Frisby in September 1999;
>
> Prior to the date on which Defendants began working for Frisby, the engineering department of Frisby did work primarily related to aircraft actuators, and did little or no work in the area of designing hydraulic pumps or motors;
>
> He was assigned to work under Defendant Douglas Murphy ("Murphy");
>
> On at least three separate occasions, Murphy gave him CAD drawings, and instructed him to incorporate some of the notations and footnotes in those drawings on three-dimensional models that Murphy later e-mailed him.  The title block on the CAD drawings he received from Murphy had been "whited-out";
>
> Two of the CAD drawings he received from Murphy had specification codes beginning with the letters "VS", and that he recognized the "VS" designation as being an Eaton-Vickers specification code;
>
> One of the CAD drawings had the letters "RBEAUD" and the date "22-Mar-99" in the corner.  "RBEAUD" was later identified as Roland Beaudette, an engineer employed by Eaton-Vickers;

> He changed the CAD drawings and models as instructed by Murphy, and the new drawings/models were then given Frisby specifications codes. The new drawings/models were also identified as trade secrets by Frisby;
>
> In June of 2002, he related to Murphy his belief that the "VS" on the CAD drawings being used by Murphy were Eaton-Vickers codes;
>
> In July of 2002, he met with the engineering and personnel managers for Frisby. In this meeting he was told the company was unhappy with his work performance and he was given thirty days in which to improve. He later met with the personnel manager and was offered a severance package, which consisted of one month's pay, if he resigned; and
>
> He resigned from Frisby in July of 2002. While clearing his work area, he found some of the CAD drawings on which he had worked. On December 12, 2002, he faxed two of the CAD drawings to Eaton-Vickers.

In the Supporting Affidavit, Sheehan also averred that he was told by John Halat ("Halat"), the Director of Research and New Development for Eaton-Vickers, that:

> Eaton-Vickers has an extensive engineering design database that has been created over many years of designing, developing, and marketing aviation products;
>
> The Frisby drawings received from the CW were direct copies of CAD drawings contained in the Eaton-Vickers engineering design database, and that it was very unlikely that these drawings would be created in exactly the same form through an independent design process;
>
> The materials on the Eaton-Vickers engineering database and CAD database were trade secrets that had been invented and developed by Eaton-Vickers, and were not available in the public domain;
>
> Murphy, when employed by Eaton-Vickers, had access to, and extensive knowledge regarding, the engineering and CAD databases;

> Prior to January of 2002, Frisby was not significantly involved in the business of designing, developing, manufacturing, or selling aviation hydraulic products. Immediately after Defendants began working at Frisby, however, Frisby began designing and offering for sale aviation hydraulic products that were functionally identical and substantially similar to Eaton-Vickers products; and
>
> To his knowledge, Frisby had not designed, developed, or sold any military and/or commercial aviation hydraulic systems, parts, or components prior to hiring Defendants

Judge Sharp issued the requested warrant on January 21, 2004, and the subject property was searched on January 22, 2004.

Defendants have now moved for a Franks hearing and to suppress evidence on two grounds. First, Defendants argue that Sheehan failed to disclose the Consulting Agreement that was entered between Eaton-Vickers and the CW, and failed to disclose other payments made to the CW by Eaton-Vickers, in the Supporting Affidavit. Second, Defendants argue that the information in the Supporting Affidavit that Frisby was not significantly involved in the business of designing, developing, manufacturing, and selling aviation hydraulic products until they began working for that company is false.

## II. Legal Discussion

In Franks v. Delaware, 438 U.S. 154 (1978), the United States Supreme Court recognized that a criminal defendant could raise a constitutional challenge to the validity of a search warrant. Specifically, the Supreme Court held:

4

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56.  Thus:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Id. at 171-72.  See also United States v. Dickey, 102 F.3d 157,

161-62 (5th Cir. 1996) (finding that a defendant is entitled to a Franks hearing only upon a showing that "allegations in a supporting affidavit were a deliberate falsehood or made with a reckless disregard for the truth" and "the remaining portion of the affidavit is not sufficient to support a finding of probable cause.").

Defendants first argue that they are entitled to a Franks hearing because Sheehan failed to disclose to the magistrate judge the fact that the CW was being paid by Eaton-Vickers for his cooperation. In support of this argument, Defendants cite to the "Consulting Agreement" entered between CW and Eaton-Vickers whereby the latter agreed to provide CW: (1) full indemnification in connection with his cooperation with Eaton-Vickers and the government; (2) payment of attorneys' fees and defense costs incurred in connection with his cooperation; (3) reimbursement for incurred expenses; (4) employment with benefits until the age of 65 if he lost his job because of his cooperation or for any reason; and (5) an hourly fee of $50.00 to compensate him for time lost from work. See Mot. for Franks Hr'g, Ex. 7. Defendants further argue that the fact the CW was being compensated is germane to the finding of probable cause because it raises serious questions regarding his financial self-interest, bias, and fundamental credibility. See Mem. in Supp. of Mot. for Franks Hr'g, 14-15.

6

The Court finds Defendants are not entitled to a *Franks* hearing based on Sheehan's failure to disclose the existing Consulting Agreement in the Supporting Affidavit. First, although Defendants have presented evidence that one of the Assistant United States Attorneys assigned to the case received an e-mail informing him that Eaton-Vickers had arranged to "bear the actual cost of [CW's] and his attorney's attendance at necessary and reasonable appearances in connection with this litigation", see Mot. for *Franks* Hr'g, at Ex. 26, they have not presented any evidence to show that the FBI or Sheehan was made aware of this e-mail or the Consulting Agreement entered between CW and Eaton-Vickers at the time the Supporting Affidavit was drafted or presented to the magistrate judge.[1]  To the contrary, the record shows that Sheehan did not have such knowledge.  See Resp. to Mot. for *Franks* Hr'g, Ex. 10 (Sheehan Aff.) at ¶ 8 (avering: "I have since learned from the United States Attorneys' Office in Jackson, Mississippi, that the CW and Eaton Aerospace in 2003 had reached a 'consulting agreement with indemnity terms.'  At no time prior to the search did I know about this agreement.").  As there has been no showing

---

[1] There is also no evidence that the government was aware of the exact terms of the Consulting Agreement entered by CW and Eaton-Vickers.  Although Defendants allege that there is reason to believe the government knew the details of the financial arrangement between CW and Eaton-Vickers, and that there may be additional pertinent evidence regarding the extent to which the government was advised of that arrangement, they have not presented any evidence in support of these claims.

that Sheehan was aware of the Consulting Agreement or any other existing financial arrangement between the CW and Eaton-Vickers, the Court finds he did not act with reckless disregard for the truth by failing to disclose the existence or terms of that agreement/arrangement in the Supporting Affidavit. See e.g. Franks, 438 U.S. at 171-72 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant ..."); United States v. Brown, 298 F.3d 392, 395 (5th Cir. 2002) (finding that a defendant is not entitled to a Franks hearing unless he shows that the "allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth ...").

   Second, as Defendants have failed to show that Sheehan was aware of the subject Consulting Agreement and/or financial arrangement, the Court finds they have failed to show that he purposefully excluded this information with the intent to mislead the magistrate judge. See e.g. United States v. Tomblin, 46 F.3d 1369, 1377 (5th Cir. 1995)("'Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity.'")(quoting United States v. Colkley, 899 F.2d 297, 303 (4th Cir. 1990)) ; United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980) ("[I]t must be proven that the omissions

8

[in a supporting affidavit] were made intentionally or with a reckless disregard for the accuracy of the affidavit; negligent omissions will not undermine the affidavit.").

Finally, Defendants have failed to show that the omitted information was material. See Tomblin, 46 F.3d at 1377 (finding that unless an omissions is material, the affidavit stands)(citing Colkley, 899 F.2d at 301). As explained in Colkley:

> The district court misstated the type of materiality that Franks requires. It believed that the affiant's omission was material because it "may have affected the outcome" of the probable cause determination. However, to be material under Franks, an omission must do more than potentially affect the probable cause determination: it must be "necessary to the finding of probable cause." Franks, 438 U.S. at 156. For an omission to serve as the basis for a hearing under Franks, it must be such that its inclusion in the affidavit would defeat probable cause for arrest. See United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986). Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing. Id. at 962.

Colkley, 899 F.2d at 301 (alterations in original).

The Court finds that while the omitted financial information may have bearing on the credibility of the CW, and thus may have affected the probable cause determination, there has been no showing that it would have precluded a finding of probable cause by the magistrate judge. In other words, the Court finds that had this information been presented in the Supporting Affidavit, it would not have defeated a finding of probable cause in light of the other averments contained in that affidavit. See e.g., United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007)(finding "that

9

an affidavit is not robbed of its probative effect by its failure to mention that the informant 'was a paid informant who avoided prosecution by virtue of her testimony'")(quoting United States v. Milton, 153 F.3d 891, 896 n.3 (8th Cir. 1998)).

For these reasons, the Court finds Defendants' Motion for Franks Hearing and to Suppress, based on Sheehan's alleged omissions regarding the Consulting Agreement and/or other financial agreements between the CW and Eaton-Vickers, should be denied.

Next, Defendants argue that they are entitled to a Franks hearing because the statements in the Supporting Affidavit that Frisby was not significantly involved in the business of designing, developing, manufacturing, and selling aviation hydraulic products until the defendants joined that company in January of 2002 are false.  In support of this argument, Defendants argue that in September of 2000, Frisby acquired a hydraulic pump and motor line from Honeywell, which had been the third largest competitor in that area.  Defendants further argue that the government knew the subject statements in the Supporting Affidavit were false based on documents it obtained from Eaton-Vickers.  See Mot. for Franks Hr'g, Ex. 11 (Eaton Documents 7262-63)(providing: "With the Honeywell acquisition in September 2000 and the expansion that resulted, Frisby entered significantly into the design, manufacture and sale of aeronautical hydraulic pumps and motors ...").

10

The Court again finds that Defendants are not entitled to a Franks hearing based on this alleged misstatement.  First, although Defendants attack the credibility of the statement made by Halat to Sheehan, which was then incorporated into the Supporting Affidavit, there has been no showing that Sheehan knew this statement was false when the affidavit was drafted or presented to the magistrate judge.  As Franks only permits the impeachment of deliberate false statements made by the affiant, and not non-governmental informants, the Court finds this argument is insufficient to warrant a Franks hearing in this case.  Franks, 438 U.S. at 171-72.

Second, the Court finds there is a question as to whether Halat's statements to Sheehan were false.  Specifically, despite the acquisition by Fribsy of the Honeywell hydraulic pump and motor line, Halat declared:

> I understand that in or around September 2000, Frisby acquired Honeywell's hydraulic business, including Honeywell's engineering design drawings and related intellectual property and Honeywell's plant ....  Up to that time, in my experience, Honeywell had not been a significant competitor of Eaton Aerospace or its predecessor in the aviation hydraulics business.
>
> Based upon Honeywell's competitive position in the aviation hydraulics market prior to September 2000, I do not believe the Honeywell design and manufacturing drawings and specifications acquired by Frisby would have been sufficient to permit Frisby to be a major competitor in the aviation hydraulics industry or to develop large capacity hydraulic pumps and motors and other sophisticated, state of the art, aviation hydraulics products.  Based upon my knowledge of the industry, the limited number and variety of aviation hydraulics products offered by Honeywell, alone, would not have permitted Frisby to become a significant competitor in the aviation hydraulics business.

11

See Resp. to Mot. for Franks Hr'g, Ex. 1 (Halat Decl.), ¶¶ 11-12. In addition, Halat's statements to Sheehan were corroborated by the CW who told Sheehan that "[p]rior to January, 2002, Frisby did little or no work in the area of designing hydraulic pumps or motors." See Mot. for Franks Hr'g, Ex 1. (Supporting Affidavit), ¶ 10. Based on the record before it, the Court finds that Defendants have failed to make the required preliminary showing that the statements regarding whether Frisby was significantly involved in aviation hydraulic business before Defendants joined that company were false.

Finally, in the event these statements are false, the Court finds that absent these statements the Supporting Affidavit contains sufficient information to support a finding of probable cause. In other words, even if these allegedly false statements were omitted from the Supporting Affidavit, the Court finds the magistrate judge would still have been "provided sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched," United States v. Wake, 948 F.2d 1422, 1428 (5th Cir. 1991), and that a crime probably had been committed.

For these reasons, the Court finds Defendants' Motion for Franks Hearing and to Suppress, based on the alleged misstatement that Frisby was not significantly involved in aviation hydraulic business before Defendants joined that company, should be denied.

12

Having found that Defendants' Motion for a Franks Hearing and to Suppress should be denied, the Court additionally finds that the Orders entered by United States Magistrate Judge Linda R. Anderson requiring the production of documents related to the Franks motion should be vacated, that the objections taken from those Orders should be denied as moot, and that all subpoenas requiring the production of such documents should be quashed.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Defendants' Motion for Franks Hearing and to Suppress [Docket Nos. 68 and 69] are hereby denied.

IT IS FURTHER ORDERED that the November 2, 2007, and the December 21, 2007, Orders of United States Magistrate Judge Linda R. Anderson, by which the government was required to produce information relevant to the Franks Hearing [Docket Nos. 172 and 237] are hereby vacated.

IT IS FURTHER ORDERED that Defendants' Motion for Discovery of Information in the Government's Possession Relevant to the Franks Hearing and to Suppress [Docket No. 124] is hereby denied.

IT IS FURTHER ORDERED that the Government's Appeal of Magistrate Judge's Order Dated December 21, 2007, Granting Defendants' Motion for Discovery Information in the Government's Possession Relevant to the Franks Hearing and to Suppress [Docket No. 245] is hereby dismissed as moot.

IT IS FURTHER ORDERED that the November 2, 2007, and December 21, 2007, Orders of United States Magistrate Judge Linda R. Anderson, by which Michael S. Allred was required to produce information relevant to the Franks Hearing [Docket Nos. 172 and 241] are hereby vacated.

IT IS FURTHER ORDERED that the Motions of Michael S. Allred to Quash Subpoena Duces Tecum [Docket No. 82, 125, and 277], as the subject subpoenas seek information relevant to the Franks Hearing, are hereby granted. Nothing in this Order shall prevent Defendants from serving future subpoenas on Michael S. Allred.

IT IS FURTHER ORDERED that the Appeal of Magistrate Judge's Order Regarding Production of Documents by Michael S. Allred [Docket No. 248], and the Motion of Michael S. Allred to Continue Stay [Docket No. 249] are hereby dismissed as moot.

IT IS FURTHER ORDERED that the Motions of Eaton Aerospace LLC, John Halat, and Special Agent Brendan Sheehan to Quash Subpoena Duces Tecum [Docket Nos. 282, 284, and 287], as each underlying subpoena seeks production of documents relevant to, and witness attendance at, a Franks hearing, are hereby granted. Nothing in this Order shall prevent Defendants from serving future subpoenas on Eaton Aerospace LLC, John Halat, or Special Agent Brendan Sheehan.

SO ORDERED this the 6th day of May, 2008.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE